**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLA ROXANNE MAZON,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:22-cv-00342-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 16, 17, 18) |

**I.**

**INTRODUCTION**

Carla Roxanne Mazon ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' cross-motions for summary judgment, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1] Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings arguing the Administrative Law Judge failed to include work-related limitations in the residual functional capacity finding consistent with the nature and intensity of Plaintiff's limitations, and failed to

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (See ECF Nos. 10, 11, 12.)

1

offer clear and convincing reasons for discounting her subjective complaints. For the reasons explained herein, Plaintiff's motion for summary judgment shall be denied, Defendant's cross-motion for summary judgment shall be granted, and Plaintiff's social security appeal shall thus be denied.

## II.

## BACKGROUND

### A. Procedural History

On October 7, 2019, Plaintiff filed a Title II application for a period of disability insurance benefits, and a Title XVI application for supplemental income benefits, alleging a period of disability beginning on January 1, 2019. (AR 196-202, 203-212.) Plaintiff's application was initially denied on January 3, 2020, and denied upon reconsideration on April 15, 2020. (AR 87-88, 111-12.) Plaintiff requested and received a hearing before Administrative Law Judge Christina Young Mein (the "ALJ"). (AR 128-143.) Plaintiff appeared for a telephonic hearing before the ALJ on February 24, 2021. (AR 31-64.) On March 17, 2021, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 12-30.) The Appeals Council denied Plaintiff's request for review on January 25, 2022. (AR 1-8.)

On March 23, 2022, Plaintiff filed this action for judicial review. (ECF No. 1.) On July 11, 2022, Defendant filed the administrative record ("AR") in this action. (ECF No. 13.) On October 24, 2022, Plaintiff filed an opening brief. (Pl.'s Opening Br. ("Br."), ECF No. 16.) On January 30, 2023, Defendant filed an opposition brief. (Def.'s Opp'n ("Opp'n"), ECF No. 17.) Plaintiff filed a reply brief on February 14, 2023. (ECF No. 18.)

### B. The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, March 17, 2021:

- The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.
- The claimant has not engaged in substantial gainful activity since January 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

- The claimant has the following severe impairments: obesity; fibromyalgia; degenerative disc disease; depressive disorder; and post-traumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).
- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
- The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with some additional limitations. Specifically, she can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit 6 hours and stand or walk 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She can occasional[ly] balance on uneven surfaces, stoop, kneel, crouch and crawl. She needs to avoid concentrated exposure to extreme cold and heat, humidity, fumes, odors, dusts, gases and poor ventilation. She cannot work around unprotected heights or hazardous unshielded moving machinery. She can understand, remember and carry out simple and routine tasks that may entail detailed but uninvolved instructions. She can occasionally interact with coworkers and supervisors but cannot interact with the public in the performance of job duties. She can adapt to normal changes in an unskilled work setting.
- The claimant is capable of performing past relevant work as a routing clerk, DOT# 222.687-022, a light exertional level, SVP 2 job. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

(AR 17-26.)

///

///

///

# III.

# LEGAL STANDARD

## A. The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

## B. Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's

judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations and failed to offer clear and convincing reasons for discounting his subjective complaints. (Br. 9.) For the reasons explained below, the Court concludes the ALJ provided clear and convincing reasons to discount plaintiff's symptom testimony and did not err in deciding to omit such limitations from the RFC assessment.

**A.     The Clear and Convincing Standard for Evaluating Symptom Testimony[5]**

The ALJ is responsible for determining credibility,[6] resolving conflicts in medical testimony, and resolving ambiguities. Andrews, 53 F.3d at 1039. A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.") (internal quotation marks and citation omitted).

Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 504 F.3d at 1036 (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be

---

[5] Although Defendant maintains disagreement with the standard in order to preserve the issue for future appeals, Defendant acknowledges the clear and convincing standard is the applicable standard for weighing credibility in the Ninth Circuit. (Opp'n 6 n.6.)

[6] SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, at *1-2.

expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of her symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Tommasetti, 533 F.3d at 1039 (quoting Smolen, 80 F.3d at 1284).

**B.    Plaintiff's Arguments**

Plaintiff argues the ALJ only vaguely asserted that Plaintiff's statements about his symptoms were not "entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision," (AR 20), then only simply proceeded to summarize medical records, objective findings, treatment, and weigh the opinion evidence, (AR 20-23), but failed to state a clear and convincing reason for rejecting Plaintiff's testimony. See Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020) ("Although the ALJ did provide a relatively detailed overview of Lambert's medical history, 'providing a summary of medical

evidence ... is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.' " (emphasis in quoted source) (quoting Brown-Hunter, 806 F.3d at 494)). Specifically, Plaintiff supports this contention as follows:

> The ALJ's general summary of evidence offers no findings or conclusions as to what evidence undermines which portions of Plaintiff's alleged limitations. Nowhere in the hearing decision does the ALJ "identify the testimony [he] found not credible and link that testimony to the particular parts of the record supporting [his] non-credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Instead, the ALJ simply summarized Plaintiff's testimony and treatment record without connecting any of Plaintiff's subjective complaints to the evidence allegedly undermining them. This was error. The ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's complaints of pain and reduced range of motion.
>
> Defendant may argue that the ALJ's summary of the objective evidence constitutes an explanation for rejecting Plaintiff's testimony. However, the objective findings include significant imaging and clinical findings which are consistent with Plaintiff's complaints, and the ALJ failed to explain how these findings contradict his alleged symptoms. A summary of evidence, by itself, is not a specific reason for discounting subjective symptoms. *Klev v. Astrue,* 2012 WL 3728040, at *6 n.4 (E.D. Cal. Aug. 24, 2012). In rejecting Plaintiff's subjective complaints, the ALJ did not evaluate any of the criteria in the regulations or SSR 16-3p, which direct how an ALJ should consider subjective complaints.

(Br. 10-11.) Plaintiff submits that the "ALJ's ultimate conclusion at Step Five, rendered based upon the unsupported RFC determination, is unsupported by substantial evidence because the ALJ failed to consider the impact of all of Plaintiff's symptoms, including severe pain and fatigue, related to her severe impairments." (Br. 12.) Plaintiff requests remand for proper consideration of Plaintiff's pain and resulting functional limitations.

**C.  The Court Finds the ALJ Properly Provided Clear and Convincing Reasons**

The Ninth Circuit recently explained that even though a record might support a different interpretation, "[t]he standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt v. Kijakazi, 53 F.4th 489, 494 (9th Cir. 2022). While Plaintiff argues the ALJ only provided a summary of the evidence without explaining the rationale behind the decision, or failed to give specific reasons, the Court disagrees. Id. ("Ultimately, the 'clear and convincing' standard requires an ALJ to

show his work, which the ALJ did here.").

Based on the Court's review of the ALJ's opinion, after reviewing Plaintiff's testimony and the record evidence, the ALJ explained how she considered the contrary medical opinions, objective medical evidence concerning Plaintiff's physical and mental impairments, Plaintiff's conservative treatment history for pain and mental symptoms, Plaintiff's response to treatment with medication, the frequency of treatment for mental symptoms, and her activities of daily living. (AR 24.) The Court first excerpts the conclusion of the ALJ that summarizes the independent reasons for the ALJ's determination as to Plaintiff's symptom testimony, and then turns to address whether each rationale was properly supported and is a clear and convincing reason as to the record as a whole in this matter. The ALJ concluded the RFC finding in relation to the reasons weighing the symptom testimony as follows:

> Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the objective medical evidence as a whole, as well as the available opinion evidence with regard to the claimant's functionality during the period at issue. The record reflects persistent pain complaints over time. Diffuse tenderness is noted in the record, as well as range of motion restrictions. However, there are limited findings with respect to imaging studies. Old images on file are consistent with degenerative changes in the claimant's spine. However, the claimant's course of treatment has been largely conservative, and she has reported some response to treatment with medication. With regard to her mental impairments, the record reflects only intermittent treatment during the period at issue. The claimant has reported symptoms of depression and PTSD over time. However, she has presented with grossly normal mental statuses, and the record reflects overall stability. She has generally denied suicidal ideation, and has not required inpatient or emergency treatment for mental impairments. Further, the record reflects a relatively normal level of activities of daily living, with the claimant continuing to provide childcare for her children and to perform common household chores such as cleaning. Given all of these factors, the allegations with regard to the intensity, persistence, and limiting effects of the claimant's impairments are found to be not entirely consistent with or supported by the evidence as a whole. The residual functional capacity found above takes into account the full range of the claimant's documented symptomology over the period at issue.

(AR 24.)

Generally, the Court agrees with Defendant that the ALJ's sequence of summarizing evidence followed by giving specific findings, followed a conventional organization for ALJ

1  decision writing.  The Court further finds it is sufficiently clear for judicial review, and for the
2  reasons explained below, are rationally and sufficiently connected to evidence in the record and
3  analysis in the decision to be upheld.  Smartt, 53 F.4th at 494 ("Where the evidence is
4  susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.")
5  (citation omitted); Kaufmann v. Kijakazi, 32 F.4th 843, 851 (9th Cir. 2022) ("Looking to *all* the
6  pages of the ALJ's decision, the court held that, contrary to its original ruling, the ALJ had, in
7  fact, explained which daily activities conflicted with which parts of Claimant's testimony.")
8  (emphasis in original); Razaqi v. Kijakazi, No. 1:20-CV-01705-GSA, 2022 WL 1460204, at *5
9  (E.D. Cal. May 9, 2022) ("The ALJ did not necessarily match each piece of evidence with the
10 testimony it purportedly undermined, but no controlling precedent requires that level of
11 specificity.  No inferential leaps are required to find the ALJ's reasoning clear and convincing.").

        1.        Conflict with the Opinions of Record

13 In the paragraph stating the ALJ's findings regarding Plaintiff's testimony, the ALJ found
14 that the RFC finding "is supported by . . . the available opinion evidence with regard to the
15 claimant's functionality during the period at issue."  (AR 24.)  Earlier in the decision, the ALJ
16 found generally persuasive the prior administrative medical findings from Drs. Spellman and
17 Spoor regarding Plaintiff's ability to perform modified light work.  (AR 23, 71-73, 95-97.)
18 Similarly, the ALJ found persuasive the opinion of consultative psychiatric examiner Dr.
19 Michiel, who opined that Plaintiff could carry out simple job instructions, including interacting
20 with coworkers, supervisors and the public in the routine setting of simple job instructions.  (AR
21 23-24, 320-24.)

22 Plaintiff does not meaningfully challenge the ALJ's reliance on these opinions, and
23 mounts no specific reply to this factor.  This is a proper factor for the ALJ to weigh symptom
24 testimony.  See 20 C.F.R. § 404.1529(c)(3), (4) ("Section 404.1520c explains in detail how we
25 consider medical opinions and prior administrative medical findings about the nature and
26 severity of your impairment(s) and any related symptoms, such as pain.").  Significantly, there
27 were no more restrictive opinions in the record regarding Plaintiff's physical or mental capacity.
28 The Court finds the ALJ's reliance on the medical opinion testimony is supported by

1  substantial evidence in the record and is one of multiple clear and convincing reasons in the
2  opinion. See Carmickle, 533 F.3d at 1161 (examining source's opinion proper basis for rejecting
3  a claimant's testimony); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) ("In
4  addition, the medical evidence, including Dr. Eather's report and Dr. Neville's report—which
5  both found Stubbs–Danielson could perform a limited range of work—support the ALJ's
6  credibility determination.").

        2.        ALJ's Analysis and Reliance on Objective Findings

        A lack of objective medical evidence is insufficient standing alone under the clear and convincing standard. See 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work . . . [h]owever, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects . . . [and] [t]he ALJ also pointed out ways in which Rollins' claim to have totally disabling pain was undermined by her own testimony about her daily activities.") (citing 20 C.F.R. § 404.1529(c)(2)); Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); Burch, 400 F.3d at 680-81 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

        Nonetheless, as this Court has maintained, there is a difference between a lack of objective medical evidence, and inconsistency with the objective medical evidence. See Garcia v. Comm'r of Soc. Sec., No. 1:21-CV-00328-BAK, 2022 WL 3908307, at *9–12 (E.D. Cal. Aug. 30, 2022) ("The distinction between medical evidence simply failing to support a plaintiff's

testimony and medical evidence being inconsistent is critical because the latter may qualify as a specific, clear, and convincing reason to reject a plaintiff's testimony while the former does not."). Indeed, the Ninth Circuit has recently clarified this difference:

> Claimants like Smartt sometimes mischaracterize *Burch* as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of *Burch*. When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases. [citations]
>
> Instead, what *Burch* requires is that an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise. That is, an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence "fully corroborat[ing]" every allegation within the subjective testimony. *Burch*, 400 F.3d at 681; *see also Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987) ("If objective medical evidence must establish that severe pain exists, subjective testimony serves no purpose at all."). That—and only that—is what *Burch* forbids.
>
> Indeed, if *Burch* was applied as aggressively as Smartt insists, an ALJ would be required in many cases to simply accept a claimant's subjective symptom testimony notwithstanding inconsistencies between that testimony and the other objective medical evidence in the record, allowing a claimant's subjective evidence to effectively trump all other evidence in a case. This misinterpretation of *Burch* conflicts with other precedents from our court, where we've made clear that an ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to" the Social Security Act. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Smartt, 53 F.4th at 498–99.

The ALJ considered that objective examination findings only partially supported Plaintiff's testimony (AR 24). For Plaintiff's physical complaints, the ALJ noted the record indicated "[d]iffuse tenderness . . . range of motion restrictions . . . [and] limited findings with respect to imaging studies," which the ALJ found "consistent with degenerative changes in the claimant's spine" per "[o]ld images on file." (AR 20, 24.) Despite Plaintiff's challenge, the Court agrees with Defendant that the ALJ properly considered that the October 31, 2015 images

were older in the context of this record, in which Plaintiff alleged that her disability began over three years later on January 1, 2019 (AR 15, 24, 203, 213). Ruckdashel v. Colvin, 672 F. App'x 745, 746 (9th Cir. 2017) ("The ALJ provided clear and convincing reasons for partially rejecting Ruckdashel's testimony by stating that Ruckdashel worked full time with her impairments for several years without issue and her course of treatment was relatively conservative."). Further, that is essentially the only specifically expressed challenge by Plaintiff to the evaluation of the objective medical evidence. (See Br. 11.)

Regarding Plaintiff's mental symptoms, the ALJ found that Plaintiff "has reported symptoms of depression and PTSD over time. However, she has presented with grossly normal mental statuses." (AR 24.) Immediately prior in the decision, the ALJ discussed that Dr. Michiel's consultative examination reflected "grossly normal memory and concentration." (AR 24, 322-23.) Dr. Michiel observed that Plaintiff was fairly groomed, casually dressed with adequate personal hygiene, there were no involuntary movements or specific mannerisms, Plaintiff kept fair eye contact, speech was normal with slight latency, she denied suicidal or homicidal ideation, thought process was goal directed, thought content was not delusional, she could remember five digits forward and backwards, she recalled three out of three items immediately and after five minutes, and there were no recorded deficits with memory. (AR 322-23.)

The ALJ also discussed that when Plaintiff established care in April 2018, she had recently experienced worsening of depressive symptoms after the birth of her child in January 2018. (AR 22, 479.) She denied suicidal ideation. (AR 479.) On examination, Plaintiff had logical thought process with some initial tangentiality that improved over the assessment, fair to intact memory, and fair insight and judgment alongside her symptoms of fluctuating, irritable, depressed, and anxious mood. (AR 24, 482.) In August 2018, Plaintiff had normal cognition and speech in August 2018 (AR 22, 470-71 (cooperative, normal cognition, speech, and orientation; organized thought process; average intelligence).) Plaintiff reported some suicidal ideation that had ceased within two months. (AR 472 ("now went away").) Plaintiff wanted to re-start care in May 2020, at which time she denied suicidal or homicidal ideation. (AR 467.) In

14

October 2020, Plaintiff's mental status examination reflected average insight, that Plaintiff was alert and oriented, she had reasonable recent and remote memories, her mood was fair, and she had "proper responses and attitude" during the examination. (AR 487.)

The Court finds these portions of the ALJ's opinion in relation to the record provide additional support for the finding that the ALJ properly relied on the objective medical evidence in evaluating the Plaintiff's symptom testimony. Molina, 674 F.3d at 1113 ("[T]he ALJ supported her conclusion that Molina was not credible on the additional grounds that Molina's allegations were undermined by her demeanor and presentation as described by Dr. Yost."). Plaintiff has not specifically mounted challenges to the ALJ's evaluation of the mental status examinations in initial briefing or reply. (Br. 10-12; see Reply generally.)

Accordingly, the Court concludes that the ALJ sufficiently summarized, *and* evaluated the objective evidence in the context of all of the evidence in the record. (AR 20-24.) As part of the overall analysis, the Court finds the ALJ properly found the objective medical evidence did not support Plaintiff's claims of disabling symptoms and functional limitations. The Court concludes the ALJ's evaluation of the objective medical evidence presents a clear and convincing reason to reject the Plaintiff's claims, in conjunction with other reasons. Smartt, 53 F.4th at 498–99; Tommasetti, 533 F.3d at 1041; Carmickle, 533 F.3d at 1161.

### 3. Conservative Treatment

The ALJ further found that Plaintiff's "course of treatment has largely been conservative, and she has reported some response to treatment with medication" for her physical symptoms. (AR 21 (discussing treatment with medication), 24.) Plaintiff argues the ALJ failed to support the assertion that some improvement in Plaintiff's pain undermines her reported limitations due to pain, as [e]ven when the treatment provided some improvement of Plaintiff's symptoms, the medical evidence consistently shows that she remained in significant pain." Jana D. R. v. Saul, 5:20-CV-01098-AFM, 2021 WL 2826436, at *4 (C.D. Cal. July 7, 2021).

As Defendant highlights, the ALJ's earlier summary of the evidence showed that her doctors treated her with medications in response to her reports of pain and tenderness (AR 21), and there is evidence the medical records reflected Plaintiff's assessments to her doctors that

medications provided adequate pain control. Pain specialist Thomas J. O'Laughlin, M.D., treated Plaintiff from February 2019 through early 2020 (AR 310; AR 294-315, 369-444, 451-66). Defendant notes that aside from two isolated exceptions in late 2019, Plaintiff checked "yes" in numerous questionnaires from Dr. O'Laughlin's office in response to questions asking if medication helped her to sufficiently take care of activities of daily living, and if medications provided her with adequate pain relief. (AR 295 (September 2019), 297 (August 2019), 299 (July 2019), 301 (June 2019), 303 (August 2018), 305 (July 2019), 307 (March 2019), 309 (February 2019), 369 (February 2020), 372 (January 2019), 376 (December2019), 379 (November 2019), 383 (October 2019), 399 (June 2019), 402 (May 2018), 424 (March 2020); AR 462 ("Soma really helps" in April 2020).)

Plaintiff does not mount any specific argument in reply to these records. The Court finds the ALJ's rationale is supported by substantial evidence in the record, and is a clear and convincing reason for discounting Plaintiff's symptom testimony in consideration of the record as a whole. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir.1995))); Warre v.Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling").

4.   Intermittent Treatment for Mental Impairments

The ALJ found that "the record reflects only intermittent treatment during the period at issue" for mental symptoms. (AR 24.)

As the ALJ recognized, Plaintiff presented to the Community Mental Health Center for psychiatric services in August 2018, but she "was noted to have not started recommended treatment or medications prescribed in prior encounters." (AR 22, 468.) Defendant highlights the treatment notes recorded that Plaintiff had a "[h]istory o[f] non adherence to [treatment]:" she had seen a provider a few months earlier, "but did not pick up her prescriptions or begin recommended treatment," (AR 468, 475-77 (May 2018 visit) and that she was prescribed

1  medications to which she previously had "a good response." (AR 472.)[7]

2  The ALJ noted Plaintiff generally denied suicidal ideation (AR 24). Defendant highlights
3  though Plaintiff had reported some suicidal ideation in the 2018 time period, she said that it
4  "went away" despite not engaging in recommended treatment (AR 472), and otherwise denied
5  suicidal ideation (AR 322-23, 467, 476, 479). The ALJ correctly noted that Plaintiff "has not
6  required inpatient or emergency treatment for mental impairments" (AR 24, 321 (never
7  hospitalized), 473 (did not meet criteria for 5150 hold).)

8  Defendant submits that considering Plaintiff's course of treatment alongside the mental
9  status examination findings for the relevant time period, the ALJ appropriately found that
10  Plaintiff's testimony regarding disabling symptoms was not fully supported. Plaintiff has
11  submitted no direct reply to these arguments.

12  The Court finds the ALJ's findings concerning intermittent treatment for mental
13  impairments is an additional clear and convincing reason provided by the ALJ for her evaluation
14  of the Plaintiff's symptom testimony. 20 C.F.R. § 404.1529(a) ("[W]e will consider all of the
15  available evidence, including your medical history, the medical signs and laboratory findings,
16  and statements about how your symptoms affect you."); Molina, 674 F.3d at1113-14 ("Although
17  Molina provided reasons for resisting treatment, there was no medical evidence that Molina's
18  resistance was attributable to her mental impairment rather than her own personal preference,
19  and it was reasonable for the ALJ to conclude that the 'level or frequency of treatment [was]
20  inconsistent with the level of complaints.' " (quoting SSR 96–7p)); Mazon v. Comm'r of Soc.
21  Sec., No. 1:22-CV-00198-SAB, 2022 WL 17978475, at *21 (E.D. Cal. Dec. 28, 2022) ("[T]he
22  Ninth Circuit has held that 'unexplained, or inadequately explained, failure to seek treatment or
23  follow a prescribed course of treatment ... can cast doubt on the sincerity of the claimant's
24  [subjective symptom] testimony.' " (quoting Fair, 885 F.2d at 603)).

25  ///

26
27  [7] Defendant further highlights that later visits were consistent with the ALJ's findings as Plaintiff sought to re-start care in March 2020, and the county Department of Behavior Health referred her to private services because here symptoms were not severe. (AR 22, 467 ("we refer people with mild to moderate [symptoms] out to private
28  services").).

### 5. Activities of Daily Living

The ALJ also found that "the record reflects a relatively normal level of activities of daily living, with the claimant continuing to provide childcare for her children and able to perform common household chores such as cleaning." (AR 24.)

The ALJ may consider the claimant's daily activities in making a credibility determination. See Diedrich v. Berryhill, 874 F.3d 634, 642-43 (9th Cir. 2017); Thomas, 278 F.3d at 958-59; 20 C.F.R. § 404.1529(c)(3)(i) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms . . . Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities."). However, "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." Vertigan, 260 F.3d at 1050 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). In fact, "many home activities are not easily transferable to what may be the more grueling environment of the workplace." Fair, 885 F.2d at 603. Only if a claimant's level of activities is inconsistent with her claimed limitations would activities of daily living have any bearing on the claimant's credibility. Reddick, 157 F.3d 722.

There are two ways an ALJ may use daily activities for an adverse credibility finding. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, daily activities can form the basis of an adverse credibility determination if the claimant's activity contradicts the claimant's testimony. Id. Second, "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.' " Id. (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ must make specific findings as to the daily activities and their transferability to conclude that the claimant's daily activities warrant an adverse credibility determination. Orn, 495 F.3d at 639.

In reply, Plaintiff argues the ALJ simply summarized Plaintiff's daily activities but did not explain why those activities are inconsistent with Plaintiff's alleged limitations, or any explanation as how these activities undermine Plaintiff's reported pain and limitations. (AR 24.)

1  Defendant argues substantial evidence supports the ALJ's findings as immediately prior in the
2  decision, the ALJ discussed Dr. Michiel's examination report, expressly noting "the claimant
3  endorsed a relatively wide range of activities of daily living, including providing childcare and
4  doing household chores."  (AR 24, 322.)  Defendant also highlights that Plaintiff's
5  questionnaires from visits with Dr. O'Laughlin reflect—with one exception in October 2019—
6  that her medications helped her to sufficiently take care of activities of daily living. (AR 294-95,
7  297, 299, 301, 303, 305, 307, 309, 369, 372, 376, 379, 383, 386, 390, 395, 399, 402, 405, 409,
8  411, 424, 426, 429, 433, 436, 440, 443.)

9        The Court finds sufficient support in the record to find the ALJ's discussion of daily
10 activities was a clear and convincing for giving less weight to Plaintiff's symptom testimony.
11 See Smartt, 53 F.4th at 499 ("The standard isn't whether our court is convinced, but instead
12 whether the ALJ's rationale is clear enough that it has the power to convince."); Kaufmann, 32
13 F.4th at 851–52 ("Looking to the entire record, substantial evidence supports the ALJ's
14 conclusion that Claimant's testimony about the extent of her limitations conflicted with the
15 evidence of her daily activities, such as sewing, crocheting, and vacationing."); Lopez v. Colvin,
16 No. 1:13-CV-00741-SKO, 2014 WL 3362250, at *16 (E.D. Cal. July 8, 2014) ("While the ALJ
17 did not explain that Plaintiff's daily activities were *consistent* with specific work activity, the
18 ALJ found Plaintiff's daily activities were *inconsistent* with the severity of symptoms he alleged .
19 . . [b]ecause Plaintiff's daily activities were inconsistent with the disabling symptoms he alleged,
20 the ALJ properly found such claims not credible.").

**V.**

**CONCLUSION AND ORDER**

23       In conclusion, the Court rejects the Plaintiff's challenges and finds no error warranting
24 remand of this action.  The Court finds the ALJ reasonably declined to find the record supported
25 the full extent of Plaintiff's subjective testimony, and provided clear and convincing reasons for
26 doing so, supported by substantial evidence in the record.  The Court finds no error in the ALJ's
27 omitting such allegations from the RFC.  See Smartt, 53 F.4th at 499 ("The standard isn't
28 whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has

the power to convince."); Kaufmann, 32 F.4th at 851–52; Orn, 495 F.3d at 635; Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is DENIED, Defendant's cross-motion for summary judgment is GRANTED, and Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Carla Roxanne Mazon. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**May 1, 2023**__

UNITED STATES MAGISTRATE JUDGE